59 CCPA
**Application of Walter M. CHAMOT.**
**Patent Appeal No. 8670.**

United States Court of Customs
and Patent Appeals.

March 30, 1972.

John G. Premo, Herbert B. Keil, Chicago, Ill., attys. of record, for appellant.

S. Wm. Cochran, Washington, D. C., for Commissioner of Patents; Jack E. Armore, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN, LANE, Judges, and ROSENSTEIN, Judge, United States Customs Court, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, affirming the rejection of claims 1–9 of appellant's application entitled "High Molecular Weight Polyamine Copolymers From Alkylene Polyamines and Epihalohydrin and Method of Making Same."[1] No claims have been allowed.

Appellant's application describes the invention as follows:

This invention is directed to the preparation of high molecular weight polyamine polymers prepared by a novel two step polymerization process. The first step of the process comprises slowly adding an epihalohydrin to an aqueous solution of an alkylene polyamine. This addition is carried out at elevated temperatures. The second step comprises regulating the temperature of the above reacting ingredients while at the same time the reac-

1. Serial No. 638,731 filed May 16, 1967 as a continuation-in-part of serial No. 209,262 filed July 11, 1962.

tion mix is simultaneously diluted with water. After this two step reaction is completed, a stabilizing amount of a reducing agent is added to the finished polymer to terminate any subsequent uncontrolled polymerization.

The copolymers produced by this process have a high molecular weight, are water soluble, and have a viscosity in excess of 200 centipoise (abbreviated cp. or cps.). Such copolymers are coagulants for removing inorganic suspended solids from water, and appellant alleges that they are much more efficient coagulants than polymers previously known to the art.

Claim 1 is representative of claims 1–4, which are directed to the method of preparing the copolymers:

1. A method for preparing stable, water-soluble, high-molecular weight epihalohydrin-alkylene polyamine condensation copolymers by a two step polymerization process which comprises as the first step:

A. Slow [sic] adding an epihalohydrin to an aqueous, concentrated, agitated solution of an alkylene polyamine to form an aqueous concentrated reaction mass thereof, said alkylene polyamine having the general formula:

$$H_2N(CnH_2nNH)_xH$$

where n is an integer of from 1 to 4 and x ranges from 1 to 5 and said addition being carried out at temperatures ranging from 105° F. [-] 185°F. until the mole ratio of added epihalohydrin to alkylene polyamine falls within the range of 1.4:1 to 2.2:1 respectively, and the total solids content of said reactants ranges from 35 to 60% by weight, and as a second step;

B. Further polymerizing said reaction mass after completion of epihalohydrin addition by heating said reaction mass within a temperature range of 150–185[°] F. while slowly simultaneously diluting with water said concentrated reaction mass during said heating to a final copolymer solids content ranging from 10 to 30% by weight of high molecular weight condensation polymer, and then after said two step polymerization is complete;

C. Adding at least a stabilizing amount of a reducing [sic] agent selected from the group consisting of hydrogen sulfide, alkali metal sulfites, stannous chloride, ferrous chloride and sulfur dioxide to said diluted water-soluble high molecular weight copolymer to inhibit further polymerization and prevent the formation of a gel network.

Claims 5 and 6 are product-by-process claims wherein the products are prepared in accordance with claims 1 and 4, respectively, and have a "viscosity in excess of 200 cps." Claims 7–9 are directed to the use of the products of claims 5 and 6 as coagulants.

The references relied upon are:

| Lehmann et al. (Lehmann) | 2,849,411 | August 26, 1958 |
|---|---|---|
| Nagan | 3,131,144 | April 28, 1964 |
| Fordyce | 3,240,721 | March 15, 1966 |

Lehmann discloses preparing stable, water-soluble, high molecular weight copolymers by the condensation of epichlorohydrin with certain diamines or polyamines. The stabilizing agents used are acids, for instance mineral acids. As to the method of preparing the copolymers, the Patent Office relied in particular on example 2, which states:

92 parts of epichlorohydrin (1 mol) are introduced within 30 minutes while stirring into the 55° C. hot solution of 46 parts of dipropylenetriamine (0.35 mol) and 500 cc. of water. After 6 hours the viscosity has increased to about 500 cp. 650 cc. of 55° C. hot water are added and the dilute solution is condensed until it reaches a viscosity of about 600 cp.

Elsewhere in the Lehmann patent, it is disclosed that "[i]n general, temperatures of 40–70° C. [104–158° F.] suffice to guarantee a smooth reaction."

The Fordyce patent shows adding reducing agent stabilizers to epihalohydrin-polyamine condensation products and using the resultant stable, water-soluble, high molecular weight copolymers as coagulants or flocculating agents. It is stated that "it is well known that the higher the molecular weight of the flocculating agent, the more efficient it generally is in its action."

Nagan also shows using halohydrin-polyamine condensates as coagulants. The examiner cited Nagan particularly to show using such coagulants in the range (0.1 to 30 parts by weight per million parts by weight of the suspension) specified in appellant's claim 8. That is, claims 1–7 and 9 were rejected under 35 U.S.C. § 103 as unpatentable over Lehmann in view of Fordyce, whereas claim 8, which sets forth the specific amount of coagulant used, was rejected on the same ground or with the addition of Nagan.

The board affirmed the examiner's rejections, reasoning that it would have been obvious to one of ordinary skill in the art to substitute the stabilizers of Fordyce for those of Lehmann, and to use such stabilized copolymers as coagulants in accordance with the teachings of the secondary references.

Appellant does not seriously dispute the board's reasoning in that regard (except for the fact that appellant alleges that the claims directed to the coagulation process, as well as the rest of the claims, are unobvious since the claimed copolymers are superior coagulants to those previously known) if the Lehmann reference does in fact disclose the claimed polymerization process and resulting copolymers. It is appellant's position that:

> Example 2 of the Lehmann, et al. reference teaches a one-step condensation reaction between epichlorohydrin and a polyamine. During the reaction hot water is added to dilute the polymerizing product. Appellant's two-step process requires as the second step the heating of the partially condensed polymer within a temperature range of 150–185° F. while slowly and simultaneously diluting with water.

The board, on the other hand, saw "nothing unobvious in raising the temperature of the second stage or both stages of the Lehmann et al. process by 19° F., the slightly higher temperature of 150° F. still being within the disclosed range." Likewise, the board presumed that the 650 cc. of water mentioned in example 2 of Lehmann would be added "at a moderate rate."

We think the board's presumption to be reasonable, and we agree that the claimed polymerization process would have been prima facie obvious in view of Lehmann. Appellant, in his specification, discloses that to achieve high molecular weight, water-soluble copolymers having a viscosity in excess of 200 centipoise, it is essential that "the final polymerization step be carried out with simultaneous dilution" and continued heating. Lehmann states that he obtains high molecular weight, water-soluble copolymers having a viscosity of 600 centipoise. Therefore, it seems reasonable to presume, as did the board, that in example 2 of Lehmann the dilution is conducted at a moderate rate while heating is continued such that copolymers having the disclosed properties are obtained.

Appellant, in an attempt to show that the products of Lehmann are inferior to those produced by the claimed process, submitted a Rule 132 affidavit. In the first run of that affidavit, which attempted to duplicate example 2 of Lehmann, hot water was added at a moderate rate without the subsequent continuation of heat. The resulting copolymers had a viscosity of only 10 centipoise. In the second run, hot water was added at a moderate rate and heating was continued, and yet the maximum viscosity reached was only 14 centipoise. Thus, even though the dilution in both runs was at a moderate rate and in the second run the dilution was accompanied by heating, the viscosity never came close to that which Lehmann states he obtains nor that which appellant's speci-

fication discloses as achieved when dilution and heating are continued simultaneously. The board ascribed the poor results in the Rule 132 affidavit to the affiant's "failure to follow the explicit recipe of the Lehmann et al. patent" in that the particular alkylene polyamine used was not the same as that used by Lehmann and the same molar amount was used although the number of basic nitrogen groups in the two polyamines differed. Under the circumstances we, too, do not think much weight can be given to the Rule 132 affidavit in regard to either the alleged showing of a difference between example 2 of Lehmann and appellant's polymerization process or the alleged showing that appellant's products are superior coagulants to those of Lehmann.

We also agree with the board that "the Lehmann et al. product appears to have the characteristics specified in product claims 5 and 6, including water-solubility, high molecular weight, and viscosity in excess of 200 cp." Dependent claims 5 and 6 are product-by-process claims, directed to the products of claims 1 and 4, respectively, and contain the further limitation that the products have a viscosity in excess of 200 cps. Nothing in the instant record establishes any unobvious differences between the claimed products and the products of the references. Lehmann discloses copolymers, such as those claimed, which are water-soluble, have a high molecular weight, and have a viscosity in excess of 200 centipoise.

Finally, we turn to appellant's contention that claims 7, 8 and 9, which are directed to the use of the products of claims 5 and 6 as coagulants, are patentable since the claimed copolymers are superior coagulants to those previously known. The Patent Office's position is that there is no persuasive evidence of such new and unexpected results. As we said previously, the Rule 132 affidavit is insufficient to show superiority of appellant's products as compared with those of Lehmann, and while appellant's specification may show superiority of the claimed products over those of Nagan, Lehmann and not Nagan was used as the primary reference. Besides, as the board noted, Fordyce states that "the higher the molecular weight of the flocculating agent, the more efficient it generally is in its action." This would seem to indicate that the improved coagulating results obtained with the higher molecular weight copolymers of Lehmann and appellant would not be unexpected to those skilled in the art.

The Patent Office having, in our opinion, established a case of prima facie obviousness, and appellant not having adequately rebutted it, the decision of the board is affirmed.

Affirmed.